(No. 35228.—

OZZEL ATKINS, Appellee, *vs.* THE COUNTY OF COOK,
Appellant.

*Opinion filed January 22, 1960.*

BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRANCIS X. RILEY, and EDWARD J. HLADIS, Assistant State's Attorneys, of counsel,) for appellant.

MARTIN HANDELMAN, of Chicago, (MELVIN E. LEVINSON, of counsel,) for appellee.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

The county of Cook appeals directly to this court from a decree of the circuit court of Cook County in a declaratory judgment action holding the county zoning ordinance unconstitutional and void as applied to the property of the plaintiff.

The trial court having certified that the validity of a municipal ordinance is involved and that public interest requires an appeal directly to this court, this court properly has jurisdiction under section 75(1)(c) of the Civil Practice Act. Ill. Rev. Stat. 1957, chap. 110, par. 75(1)(c).

All evidence was heard by the master, who found that the zoning ordinance as applied to plaintiff's property was void and recommended a declaratory judgment as prayed. The trial court entered a decree in accordance with the master's recommendations after overruling defendant's objections thereto. The plaintiff has exhausted all of his

administrative remedies. No questions are raised on the pleadings. The defendant appeals on the theory that refusal of the trial court to overrule the master's report was erroneous because the evidence failed to support the master's conclusions. The plaintiff takes direct issue with its contentions.

The findings of the master, while only advisory, are to be accorded due weight on review, but since the chancellor did not hear any testimony in open court, the findings of the chancellor, who adopted the master's findings, may be overruled if this court is inclined to find otherwise. *Kolze* v. *Fordtran,* 412 Ill. 461; *Layton* v. *Layton,* 5 Ill.2d 506; *Maley* v. *Burns,* 6 Ill.2d 11; *County of Cook* v. *Glasstex Co.* 16 Ill.2d 72.

The property in question is located at the northwest corner of Des Plaines River Road and Euclid Avenue. It contains approximately 42,000 square feet, slightly less than one acre. It measures 144 feet frontage on Des Plaines River Road and 299 feet frontage on Euclid Avenue.

Plaintiff acquired title to the property on August 10, 1956. At that time the property was in an "F," or farming district, of the Cook County zoning ordinance which had been adopted August 20, 1950. In an "F" district classification an R3 residential use, with a minimum of 20,000 square feet, is permitted, and in addition the following: animal farms, apiaries, mushroom barns, greenhouses, nurseries, dog kennels, sale of products from any of the above uses, storage of farm products, recreational camps, riding stables, veterinary establishments, filling of holes, picnic grounds, athletic fields, skeet or trap shooting, radio stations, and temporary carnivals and circuses. Through a specified proceeding, there may also be the following uses: institutions, radio and television towers exceeding 100 feet, stadiums, auditoriums, race tracks, fair grounds, removal of soil, stone and gravel, trailer camps, drive-in theatres, motels and junk yards.

The subject property is in the northwest part of Cook County, bounded on the east by the Des Plaines River Road, east of which is a narrow but substantial strip of forest preserve land. West of the subject property are residential and farm areas. All witnesses agree that the current trend in the area is residential.

From the subject property north to Camp McDonald Road and beyond to the intersection of Des Plaines River Road and Milwaukee Road is approximately two miles. For about an eighth of a mile north of the subject property the frontage is vacant. Then appear a series of dwellings, one of which is used for a construction company office and another for a nursery office. The area is then vacant up to Camp McDonald Road. North of Camp McDonald Road the area is vacant for half a mile. Then there is a new 37-unit motel, cocktail lounge and restaurant, and a gas station at the intersection with Milwaukee Avenue. West of this junction are five or six fairly new residences. North of Milwaukee Avenue to Palatine Road are about ten commercial uses.

Moving westward on Palatine Road to Wolf Road, a distance of one mile, the north side of Palatine is used by the Palwaukee Airport. The south side is essentially vacant with only a few houses. At the northwest corner of Palatine and Wolf Roads is an automobile service station. Southward on Wolf Road from this intersection to Camp McDonald Road the area is residential with 40 or 50 $25,000 to $30,000 homes, both on the east side of Wolf Road and the north side of Camp McDonald Road.

Moving south on Wolf from Camp McDonald Road, the land on the east side is vacant until a large nursery is reached at the intersection of Euclid and Wolf. The west side of the road in this area is devoted to a new subdivision development of $25,000 to $30,000 homes. Proceeding south on Wolf Road from Euclid to Foundry Road, the east side is used for a nursery and the west side is vacant.

From Foundry Road south to Central Road the east side is vacant, flat, well-drained and suitable for construction. On the west is an old subdivision of modest homes.

East on Central Road to Des Plaines River Road the land is vacant except for the Maryville Academy for girls which fronts on Des Plaines River Road. Moving north on Des Plaines River Road from Central, there is a small cemetery, two or three single-family dwellings, two taverns, and then Foundry Road. Back of this area on the south side of Foundry is a large subdivision with a sprinkling of development, and a single-pump gasoline station. The north side of Foundry is vacant.

From Foundry Road to Euclid Avenue on Des Plaines River Road, the south half is vacant and the north half has four or five single-family dwellings. On the southwest corner of Euclid and Des Plaines River Road, directly south of the subject property, a dwelling is being used as a combination excavating company office and living quarters. Tractors, trailers and equipment are stored on this property. On Euclid west of Des Plaines River Road, immediately west of the subject property, are 21 single-family dwellings built during the past 12 years, with three presently under construction, valued from $15,000 to $25,000. The nearest residence to the subject property is about 245 feet on the north of Euclid, and each residence is spaced about every 200 feet. West of these residences the land is vacant.

The interior of the area bounded as above described is a level area suitable for construction, most of which is vacant and being used for farming purposes.

The proposed business use for the subject property is a gasoline service station without a repair shop. The uncontradicted evidence is that it is worth $30,000 as commercial property and $3,500 in its present classification.

The first witness for plaintiff was of the opinion that the subject property could not be used for the various permitted uses because of size or incompatability of such uses

with the surrounding area, that it was not suitable for a residence because of the traffic at this intersection (4478 vehicles on Euclid and 8621 on Des Plaines River Road between 8:00 A.M. and 11:00 P.M.), that it was suitable for a service station, that such use would not diminish the value of the surrounding property, and that the highest and best use of the property north and south of the subject property was residential.

The other witness for plaintiff was of substantially the same opinion.

Defendant's witness was of the opinion that the highest and best use of the subject property was residential, that the traffic situation would be compounded as to congestion and hazard by a service station, that such use would be incompatible with the adjoining residential uses, would depreciate the same, would have an adverse effect on the residential trend in the area and would constitute spot zoning.

From the numerous cases over the past several years questioning the validity of zoning ordinances certain general principles have been evolved which have been well stated in the recent decisions of this court in *First National Bank and Trust Co. v. County of Cook,* 15 Ill.2d 26, and *County of Cook v. Glasstex Co.* 16 Ill.2d 72. In the *First National Bank case,* where the present zoning ordinance in issue was held unconstitutional as to the property involved, we said at page 31: "The question whether a zoning restriction is arbitrary and unreasonable in its application to particular property is a judicial one, and each case must necessarily be decided on its own particular facts. Among the factors to be given consideration are the use and zoning of nearby property, the character of the neighborhood, the extent property values are diminished, and the relative gain to the public as compared to the hardship imposed upon the owner. (*Krom v. City of Elmhurst,* 8 Ill.2d 104.) A zoning classification will be upheld if it bears a substantial relation to the public health, safety, comfort, morals and

welfare (*Bolger* v. *Village of Mount Prospect,* 10 Ill.2d 596); and where the question of its reasonableness as applied to a particular parcel of property is open to a fair difference of opinion, the legislative judgment of the zoning authorities should be followed. (*County of Du Page* v. *Henderson,* 402 Ill. 179.) The presumption of validity is overcome, however, when it is shown that there is no reasonable basis in public welfare requiring the restriction and the resulting loss. (*La Salle National Bank* v. *County of Cook,* 12 Ill.2d 40.) Where the gain to the public is small as compared to the hardship imposed upon the owner, no valid basis for the exercise of police power exists. *Petropoulos* v. *City of Chicago,* 5 Ill.2d 270; *Midland Electric Coal Corp.* v. *County of Knox,* 1 Ill.2d 200."

In holding the same zoning ordinance valid as applied to another property, we said at page 77 of the opinion in the *County of Cook* v. *Glasstex Company,* 16 Ill.2d 72: "It is always presumed, in an attack upon an ordinance, that the enactment is valid, and the burden of proving its invalidity falls upon the one who attacks the ordinance. (*Jacobson* v. *City of Evanston,* 10 Ill.2d 61.) He must prove by clear and convincing evidence that the zoning ordinance is, as to him, arbitrary and unreasonable, and without substantial relation to the public health, safety or welfare. These rules are based upon a recognition that zoning is primarily a legislative function, subject to court review only for the purpose of determining whether the power, as exercised, involves an undue invasion of private constitutional rights without reasonable relation to the public welfare. Where it appears, from all of the facts, that room exists for a difference of opinion concerning the reasonableness of a classification, the legislative judgment must be conclusive. (*Krom* v. *City of Elmhurst,* 8 Ill.2d 104.)" And at page 78 of the same opinion we further said: "Among the uses permitted in the 'F' farming classification provided for this area by this zoning ordinance, none are

similar to any light industrial use, or to the fabrication pursued by appellee. Certainly the *Sachs* [1 Ill.2d 342] and *Johnson* [370 Ill. 272] cases do not establish the principle that because the ordinance permits uses which the property owner claims more detrimental to people and property than his use, such permitted uses render the ordinance void as applied to his property. The fact that a zoning ordinance permits a large number of uses within the district, which the property owner deems more detrimental to the people and their property, can neither diminish nor enlarge his defense to a charge of violation, for those other uses are not his. *County of Du Page* v. *Henderson,* 402 Ill. 179; *Jacobson* v. *City of Evanston,* 10 Ill.2d 61."

In *La Salle National Bank* v. *County of Cook,* 12 Ill.2d 40, at page 46, we reviewed the various facts to be considered in deciding such cases as this and said that "among the facts which may be taken into consideration in determining the validity of an ordinance are the following: (1) The existing uses and zoning of nearby property [citing cases], (2) the extent to which property values are diminished by the particular zoning restrictions [citing cases], (3) the extent to which the destruction of property values of plaintiff promotes the health, safety, morals or general welfare of the public [citing cases], (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner [citing cases], (5) the suitability of the subject property for the zoned purposes (in this cause residences on 10,000 square feet), [citing cases], and (6) the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property [citing cases]."

Here the master in chancery heard the evidence and made detailed findings as to the physical facts involved, and as to both plaintiff's and defendant's testimony as to value and as to the highest and best use of the property.

From such evidence and findings he concluded, among other things, as follows:

"1. Considering the area bounded on the east by River Road and its confluence with Milwaukee Avenue, on the north by Palatine Road, on the west by Wolf Road, and on the south by Central Road as the area to which to relate the influence of the use of the subject property for a gasoline station, the following must be concluded:

(a) That there is a trend of development in the area west of River Road which is toward residential use;

(b) That the frontage along River Road which has been improved has in the main developed (recently) for non-residential use, the dwelling uses being either in old houses or in conjunction with business uses;

(c) The area is already subject to at least 4 gasoline stations and an automobile repair shop;

(d) The impact on this area of use of the subject property for a gasoline station would be negligible considered in relation to the whole since it would not introduce a type of use new to the area, and would not introduce new traffic since essentially such a station would be dependent upon transient traffic which presently passes the corner in great volume on both roads.

\* \* \*

"3. And adverse effect of a gasoline station would extend only for a distance of 500 feet in any direction:

(a) To the north and northwest this would affect vacant land which is zoned for 'F' uses and potentially may be used for non-residential uses anyway;

(b) To the northeast and southeast it would affect the Forest Preserve which is already subject to that use in its portion opposite the junction of River Road and Milwaukee Avenue;

> (c) To the south it would affect an old dwelling used by an excavating firm which stores its equipment in the open, and some vacant land, all zoned 'F';
>
> (d) To the west it affects several single family dwellings on both sides of Euclid Road.

"4. A gasoline station on the subject property would not be a detrimental use by reason of noise or odor, and traffic across gasoline station driveways has resulted in few incidents of injury or death at such locations.

\* \* \*

"6. Use for a gasoline station is not a non-residential use of greater effect than some of the uses permitted by the present 'F' District classification, e.g., dog kennel, poultry or animal farm, mushroom barn, riding stable.

"7. The subject property is not a good residential location because of the heavy traffic on both of the roads, and the noise from the starting and stopping of vehicles, and a house built thereon would have to be nice, and be a bargain in order to sell.

"8. The subject property is characterized by the trend of development on its River Road side, and not by the trend of development on Euclid Avenue.

"9. Any adverse effect on the adjoining residences would be negligible in contrast with the monetary loss to the plaintiff if the subject property is not permitted to be used for business purposes, and the effect of such use, not being essentially more onerous than that of some of the permitted uses in the 'F' District classification, would not be unexpected by the owners of these residences.

\* \* \*

"11. Since use of the subject property for a gasoline station would not have any adverse effect on the area denominated 'the area of influence,' the trend of development of the River Road frontage being toward business, the subject property not being suited for desirable residential use, the use proposed being of no greater effect than

some of the uses already permitted by the present zoning, there being a value for business about eight times greater than the value for 'F' uses, and minimal adverse effect on the surrounding area, and the subject property being characterized by its River Road frontage, the denial of the use for a gasoline station is not reasonably related to the public need, and the zoning ordinance when applied to the subject property is void."

These findings and conclusions were approved and adopted by the chancellor.

From our examination of the record we are of the opinion that both the master in chancery and trial court were correct in their conclusions. In all cases of this nature there is a conflict of opinion testimony. The credibility of witnesses is of great importance. In a trial without a jury the findings of the trial court will not be disturbed unless manifestly against the weight of the evidence. Here ample evidence supports the findings and judgment of the trial court.

It is not the mere loss of value alone that is significant, but the fact that the public welfare does not require the restriction and resulting loss. When it is shown that no reasonable basis of public welfare requires the limitation or restriction and resulting loss, the ordinance fails and the presumption of validity is dissipated. (*Krom* v. *City of Elmhurst,* 8 Ill.2d 104.) The law does not require that the subject property be totally unsuitable for the purpose classified but it is sufficient that a substantial decrease in value results from a classification bearing no substantial relation to the public welfare. *La Salle National Bank* v. *County of Cook,* 12 Ill.2d 40.

The decree of the trial court is affirmed.

*Decree affirmed.*