(No. 46335.—

GERALD S. GROBMAN, Appellant, v. THE CITY OF DES PLAINES, Appellee.

*Opinion filed January 21, 1975.*

Leon C. Wexler, of Chicago, for appellant.

Robert J. Di Leonardi, of Des Plaines (Charles R. Hug, of counsel), for appellee.

MR. JUSTICE WARD delivered the opinion of the court:

This appeal by the plaintiff, Gerald Grobman, is from a judgment of the appellate court, with one judge dissenting (14 Ill. App. 3d 996), reversing a judgment of the circuit court of Cook County which declared a zoning ordinance of the defendant, the City of Des Plaines, unconstitutional as applied to a lot of the plaintiff.

On May 3, 1971, at a tax sale Gerald Grobman satisfied delinquent real estate taxes totalling $178.37 for the years 1967, 1968 and 1969 and obtained a tax deed to an unimproved lot in the City of Des Plaines. He subsequently paid $700 to satisfy a special assessment that had been made against the property.

The plaintiff, who is an attorney, entered into a

contract on July 23, 1971, to sell the lot for $4,000 to Leon Wexler, the performance of which contract was made contingent upon the obtaining from the defendant of a building permit to erect a single-family dwelling on the lot. In his application for the permit the plaintiff declared his intention to construct a house 20 feet wide and 56 feet long, and which would have 2½-feet side yards and cover 48% of the lot. The defendant refused to grant the permit on the ground that the lot and the proposed structure would violate section 3.B.4.4 of the defendant's zoning ordinance. That section provides:

> "[N]o dwelling hereinafter erected, relocated or reconstructed shall be located upon a lot having a smaller area than 6875 square feet or a narrower frontage than 55 feet. However, a dwelling may be erected, relocated or reconstructed upon a lot having a frontage of at least 49.5 feet if said lot: (1) is a lot of record *** approved by the corporate authorities of the City of Des Plaines prior to July 1, 1960, and (2) contains an area of not less than 6875 square feet. No more than one single-family residence shall be erected, relocated or reconstructed on any one lot. No residential building, with its accessory buildings shall occupy in excess of 30% of an interior lot, nor in excess of 35% of a corner lot."

The plaintiff's lot is 25 feet wide, 126.1 feet long and has a total area of 3,150 square feet. The proposed building would occupy 48% of this interior lot.

Thereafter the plaintiff brought a declaratory judgment action to declare the zoning ordinance unconstitutional as applied to his property.

At trial, the plaintiff testified that he was not aware of the zoning ordinance when he obtained the tax deed. The plaintiff said that after learning of the ordinance he offered to sell the lot to John Truss, who owned one of the adjoining lots, for $4,000. He said that after discussions Truss agreed to pay $1,000, which he considered was unacceptable.

William McCann, a real-estate broker testifying for the

plaintiff, said the proposed building would not interfere with either of the adjoining buildings and would not adversely affect the community. He was of the opinion that if a building permit could not be obtained to construct a single-family residence the lot would not have any value, but he said that if either of the owners of the adjoining properties bought it the value of his land would be increased approximately $4,000. On cross-examination he stated that the great majority of homes constructed in the City of Des Plaines within the preceding 15 years had been built on lots with a minimum frontage of 50 feet.

Henry McAlevy testified for the defendant using an aerial photograph he had taken of the area surrounding the lot and a map indicating the dimensions of the buildings shown. He stated that of the 83 improved lots shown in the photograph and on the map, the average lot frontage is 51.6 feet. Fifteen of the lots have a frontage in excess of 50 feet; ten lots have a frontage in excess of 60 feet; five have a frontage in excess of 75 feet; and only seven have a frontage under 50 feet, with the smallest having a frontage of 37½ feet.

Rolf Campbell, a city planning and zoning consultant, was a witness for the defendant. He testified that the average lot in the neighborhood of the plaintiff's lot has 7,000 square feet and has a frontage of 60 feet. He said that in his opinion the construction of a single-family house on the plaintiff's lot would adversely affect the two adjoining houses and would be harmful to the area in general. He based his opinion on the consideration that the construction of a house covering 48% of plaintiff's lot would impede the flow of light and air and also affect adversely the liveability of the houses adjoining it. The new house itself also would be similarly and adversely affected. He said, too, the general area would also suffer aesthetically from a house "being squeezed between the two existing structures."

John Truss, the owner of one of the houses adjoining

the plaintiff's lot, testified that Grobman originally offered to sell him the lot for $7,000. He said that Grobman had rejected his counter offer of $2,500 and testified that at the time of the trial he was willing to pay the plaintiff $1,500 for the lot.

Harold Keher, a real-estate broker, was a witness for the defendant. He testified that his opinion was that the plaintiff's lot had a value of between $1,500 and $2,000 in a sale to an adjoining owner. He further testified that the construction of the planned house on the lot would depreciate the value of the adjacent property north of plaintiff's lot by 15% to 20% and depreciate the value of the lot to the south by 10%.

The plaintiff's contention before this court is that the refusal by the defendant to grant him the building permit resulted in what was a confiscation of his property without just compensation, thus depriving him of his property without due process of law.

A zoning ordinance must be upheld if it bears any substantial relation to the public health, safety, comfort, or welfare. (*Vedovell v. City of Northlake,* 22 Ill.2d 611, 614; *Bolger v. Village of Mount Prospect,* 10 Ill.2d 596, 599; *La Salle National Bank v. City of Chicago,* 4 Ill.2d 253, 256.) We said in *La Salle National Bank v. City of Evanston,* 57 Ill.2d 415, 428, when referring to challenges to zoning classifications:

"As stated in *Exchange National Bank of Chicago v. County of Cook,* 25 Ill.2d 434, 439-40, 'It is always presumed, in an attack upon an ordinance, that the enactment is valid, and the burden of proving its invalidity falls upon the one who attacks the ordinance. (*Jacobson v. City of Evanston,* 10 Ill.2d 61.) Before a court will intervene it must be established by clear and convincing evidence that the ordinance, as applied to plaintiffs, is arbitrary and unreasonable and has no substantial relation to the public health, safety

or welfare. These rules are based upon a recognition that zoning is primarily a legislative function, subject to court review only for the purpose of determining whether the power, as exercised, involves an undue invasion of private constitutional rights without a reasonable justification in relation to the public welfare. (*People ex rel. Joseph Lumber Co. v. City of Chicago,* 402 Ill. 321; *Morgan v. City of Chicago,* 370 Ill. 347.) Where it appears, from all the facts, that room exists for a difference of opinion concerning the reasonableness of a classification, the legislative judgment must be conclusive. (*Krom v. City of Elmhurst,* 8 Ill.2d 104.)"

This court has recognized that minimum lot area limitations can be constitutionally imposed. *Galpin v. Village of River Forest,* 26 Ill.2d 515, 520; *First National Bank of Skokie v. City of Chicago,* 25 Ill.2d 366; *Cosmopolitan National Bank of Chicago v. City of Chicago,* 22 Ill.2d 367; *Reitman v. Village of River Forest,* 9 Ill.2d 448; see 95 A.L.R.2d 716, 720, 722-724 (1964); 94 A.L.R.2d 398, 402 (1964); 96 A.L.R.2d 1367, 1371 (1964).

In *Reitman v. Village of River Forest,* 9 Ill.2d 448, the plaintiffs acquired a lot 42 feet wide and 185 feet deep. Their application for a building permit was rejected because the total area of the lot was 11% less than the minimum one-fifth of an acre which was required by ordinance in order to construct a single-family residence. This court held that the zoning ordinance was not arbitrary or unreasonable as applied to the lot. Much of what was said in *Reitman* is applicable to the case we are considering.

"To sustain the judgment plaintiffs merely assert their conclusion that 'refusal to issue the requested building permit makes plaintiffs' property utterly worthless.' No attempt is made to show an

absence of any relationship to public health, safety or welfare; nor do plaintiffs point to any evidence of the extent to which the market value of the lot is impaired. They rely solely upon the inference that 'if it cannot be utilized for the erection of a home, then it has no value.' This, we think, is not enough to sustain the burden of proof resting on one who assails the validity of an ordinance. To overcome the presumption of validity, it is incumbent upon the property owner to prove by clear and affirmative evidence that the restriction is arbitrary and unreasonable. [Citation.]

\* \* \*

[T]his court cannot say the ordinance has no reasonable relationship to legitimate objects of the police power. As the Massachusetts Supreme Judicial Court observed in *Simon v. Town of Needham,* 311 Mass. 560, 42 N.E.2d 516: 'The establishment of a neighborhood of homes in such a way as to avoid congestion in the streets, to secure safety from fire and other dangers, to prevent overcrowding of land, to obtain adequate light, air and sunshine, and to enable it to be furnished with transportation, water, light, sewer and other public necessities, which when established would tend to improve and beautify the town and would harmonize with the natural characteristics of the locality, could be materially facilitated by a regulation that prescribed a reasonable minimum area for house lots." *Reitman v. Village of River Forest,* 9 Ill.2d 448, 452-453.

See *Galpin v. Village of River Forest,* 26 Ill.2d 515; *Stemwedel v. Village of Kenilworth,* 14 Ill.2d 470.

The plaintiff did not meet the burden of showing by clear and convincing evidence that the ordinance as applied

to him was arbitrary and unreasonable and without substantial relation to public health, safety or welfare. (See *Exchange National Bank of Chicago v. County of Cook,* 25 Ill.2d 434.) Rather there was substantial evidence that the ordinance was substantially related to public interest and not unconstitutional as applied to the plaintiff. It showed that 76 of the 83 improved lots within the vicinity of the plaintiff's lot have a minimum frontage of 50 feet, that the average minimum frontage of the 83 lots was 51.6 feet, or double the frontage of plaintiff's lot. Rolf Campbell, the city planner and zoning consultant, gave uncontradicted testimony that the interest and advantages to the public in enforcing the ordinance as to the plaintiff's lot were great. He said that the average lot in the neighborhood of the plaintiff's lot was 7,000 square feet and a frontage of 60 feet. In contrast the plaintiff's lot is 25 feet wide and has an area of 3,150 square feet. Campbell testified the construction of a house on a 25-foot lot would not only adversely affect the adjoining houses by impeding the flow of light and air but would adversely affect the aesthetics of the general area as well. Aesthetics may be a consideration in the determination of an ordinance's reasonableness (*La Salle National Bank v. City of Evanston,* 57 Ill.2d 415, 432), and we deem it was properly a consideration here.

The plaintiff did offer evidence that the ordinance deprived him of an opportunity of making substantial profit, but there was no showing he need have any actual loss. Even if the testimony of Truss is not considered, there was the plaintiff's acknowledgment that he had rejected an offer of $1,000 from Truss for the lot in which he had invested $878.78. The lot would have been worth more if the ordinance restriction was not effective, but that is true in probably all cases of restrictions on property. While that factor is to be considered in determining the validity of the zoning ordinance, it is not of itself determinative, particularly where, as here, the proposed use would depreciate the value of other property in the

area. *Bolger v. Village of Mount Prospect,* 10 Ill.2d 596, 602; *People ex rel. Alco Deree Co. v. City of Chicago,* 2 Ill.2d 350, 357-358.

Too, the plaintiff, an attorney, took the land 10 years after the adoption of the ordinance. While a purchaser of property is not precluded from challenging a preexisting zoning restriction, the fact that he purchased the property in the face of the restriction is a relevant circumstance, and he is in a different position than an owner who purchased prior to the restriction on the property. *Eckhardt v. City of Des Plaines,* 13 Ill.2d 562, 565; *People ex rel. Alco Deree Co. v. City of Chicago,* 2 Ill.2d 350, 359-360.

For the reasons given, the judgment of the appellate court is affirmed.

*Judgment affirmed.*