(No. 47523.—

VIRGINIA TOMASEK *et al.*, Appellees, v. THE CITY OF DES PLAINES, Appellant.—(Roy H. Michalsen *et al.*, Intervenors-Appellants.)

*Opinion filed September 20, 1976.*

Robert J. DiLeonardi, of Des Plaines, for appellant City of Des Plaines.

Leonard Bosgraf, of Chicago, for appellants Roy H. Michalsen *et al.*

Dowd, Dowd and Dowd, of Chicago (James J. Dowd and Philip J. McGuire, of counsel), for appellees.

MR. CHIEF JUSTICE WARD delivered the opinion of the court:

This appeal concerns the validity of a zoning ordinance as applied to three parcels of land located within the City of Des Plaines (hereafter, the City). The owners, Virginia Tomasek, John Rogers and Wm. L. Kunkel & Co., applied to the Des Plaines Zoning Board of Appeals for reclassification of their respective parcels from R—2 (single-family residential with a minimum lot size of 6,875 square feet) to C—2 (commercial). The Board recommended to the city council that the application be denied, and the council adopted the recommendation. Thereafter the plaintiffs filed a complaint against the City in the circuit court of Cook County seeking a declaratory judgment that the ordinance was invalid as applied to their property. Twelve other persons, who were owners of seven houses located across the street from the plaintiffs' parcels,

were allowed to intervene to defend the application of the ordinance. The trial court, after taking testimony, held that the plaintiffs "failed to overcome the presumption of validity" of the classification and that the classification of the land "is reasonable and valid and bears a reasonable relationship to the public health, safety, welfare and morals." The appellate court, with one judge dissenting, reversed (26 Ill. App. 3d 586), and we granted the defendants' petition for leave to appeal.

The three parcels, consisting of 6.288 acres, lie between tracks of the Chicago and North Western Railroad and Busse Highway. The Tomasek parcel, comprising the northwest 1.7284 acres of the property, is undeveloped and covered with greenery. On the other side of Busse Highway and directly across from the Tomasek parcel is a single-family residential development zoned R—2 with homes which as of 1972 were valued from $25,000 and $35,000. The Rogers parcel, which covers 2.0046 acres, is developed with a single-family residence. It is south of and adjacent to the Tomasek parcel. The property across from it, that is, on the other side of Busse Highway, is zoned R—1 and contains a park and the homes of some of the intervenors. The Kunkel parcel covers 2.555 acres and is separated from the Rogers parcel by a strip of land covering 0.7691 acres. (The Pioneer Trust and Savings Bank, the owner of this strip, was a plaintiff in the declaratory judgment action but was dismissed on its own motion.) The Kunkel property is undeveloped and it, too, is covered with greenery. Directly across from it, on the other side of Busse Highway and facing it, are the homes of the remaining intervenors and a forest preserve.

Busse Highway, at this location, is a four-lane road approximately 100 feet wide. It and the railroad tracks meet to form the southern boundary of the Kunkel parcel. The Tomasek parcel abuts land that is zoned M—2 (manufacturing) and that is developed but not involved here. A forest preserve and a private campground lie across

the tracks behind the Tomasek parcel and extend past the northern edge of the Kunkel parcel. Adjacent to the private campground and lying behind the remainder of the Kunkel parcel is a public works garage maintained by the City and another forest preserve.

Virginia Tomasek testified that when her parents conveyed the parcel to her in 1959 it was zoned R—2. She stated she unsuccessfully attempted to have the land rezoned to C—2 in 1962 and that she had the property listed for sale from 1964 to 1967. She said that she was the owner of a wholesale tobacco company which she intended to locate on the parcel if the zoning classification was changed to C—2. She further testified that she hoped to build four one-story buildings on her land, two or three of which would be occupied by her tobacco company. In testifying concerning the operation of her business at the proposed site, she said that 12 to 15 deliveries would be made daily by semitrailer trucks; she also stated that her tobacco firm owns a fleet of six trucks that would leave the company's plant in the morning and return in the evening.

John Rogers testified that he bought his property in 1954 for $27,000 and that he has lived there since then. He said that when he acquired the property, there were four or five single-family homes across Busse Highway in the area zoned R—1 and he believed that none of the present homes located there were worth more than $65,000. He stated that he attempted to sell his property in 1960 for $50,000 but that he did not receive any offers. He also testified that if his land were rezoned, he would build three office buildings of approximately 9,000 square feet and one of approximately 6,000 square feet.

Ralph Martin, the vice-president of Wm. L. Kunkel & Co., testified that his firm proposes to construct four one-story office buildings on its parcel. He stated that the property cannot be developed for residential purposes because it is adjacent to railroad tracks and because the

City's garage is located across the tracks. He said that William L. Kunkel conveyed the parcel to the company in 1959 when it was formed and that the parcel was zoned for residential use at that time. He also testified that the company had been trying to sell the land for some time and that it was asking $30,000 for it.

The plaintiffs presented the testimony of three expert witnesses. William S. Lawrence, a city planning and zoning consultant, stated his opinion that the highest and best use of the plaintiffs' property would be as office, wholesaler or jobber facilities. The basis of his opinion was that the land was bounded on the northwest by commercial facilities, on the southeast by the city garage and by the railroad tracks on one entire side. He also considered that Busse Highway was a four-lane road with a 40-mile-per-hour speed limit. On cross-examination he acknowledged that the area on the other side of Busse Highway was a "well established single-family area" and he testified that the use of the land on the other side, lying behind the plaintiffs' property and across the railroad tracks, as a forest preserve and a private campground is consistent with a single-family residential area.

M. Edward Smith, a realtor and appraiser, had the same opinion as Lawrence as to the highest and best use of the plaintiffs' property. He believed that the proposed use by the plaintiffs would have no effect on the value of the homes located across Busse Highway, which he considered ranged in value between $65,000 and $135,000. In his opinion, the plaintiffs' parcels taken together were worth $90,000 as presently zoned and they would be worth $248,000 if zoned for C—2 use. On cross-examination he stated his belief that the Rogers parcel was worth $45,000 and that the Tomasek and Kunkel parcels combined were worth $45,000. He said that, under the existing zoning classification, 30 lots for single-family homes could be placed on the property and that they would be worth $3,000 each. He admitted, however, that similar sized lots

in Des Plaines sold for $6,000 to $8,000, and he acknowledged that he knew of no single-family lot in Des Plaines that had sold for less than $5,000 in the preceding five years. Too, he acknowledged that Busse Highway was a "relatively short highway or road."

William A. McCann, a real estate broker, was the third expert testifying for the plaintiffs. He valued the property at $100,000 as zoned and $250,000 under C–2, which he said would be its highest and best use. He testified that he felt that the proposed construction by the plaintiffs would not depreciate the value of homes located across Busse Highway. On cross-examination he stated that the plaintiffs' property as zoned could be divided into 20 single-family lots. He admitted that comparably sized lots would sell for $7,000 to $12,000 in Des Plaines, if not located next to railroad tracks, and acknowledged there are single-family homes built adjacent to railroad tracks.

Six of the intervenors testified. All stated that they had relied on the residential zoning classification when they purchased their homes, and all considered that the proposed construction by the plaintiffs would decrease the value of their homes. One of the intervenors testified that he judged his property would depreciate at least 25% in value due to the increased traffic in the neighborhood and because of the change in the character of the neighborhood.

Captain Willard Blume of the Des Plaines Police Department testified as to a traffic count he had made on Busse Highway between May 1 and May 8, 1972. He said that, on the average, only 4,200 cars traveled over this in a 24-hour period. He characterized the street as being "lightly traveled" and similar to any other residential side street in Des Plaines.

The defendants also presented Arthur Sheridan, a real estate broker, appraiser and developer, and Gerwin Rourbach, a city planner, as expert witnesses. Sheridan testified that the predominant use in the area surrounding the

plaintiffs' property was residential and that the plaintiffs' property would be best used for residential purposes. In his opinion the houses on the other side of Busse Highway and zoned R—1 ranged in value between $70,000 and $130,000. He felt that these homes would lose 20% in value if the plaintiffs were allowed to construct the 12 commercial buildings across the road. He also stated that the houses in the area zoned R—2 were worth between $25,000 and $35,000 and that they would depreciate in value only 5% to 10%, because they faced each other and did not face the plaintiffs' property. In testifying as to the possibility of developing the plaintiffs' parcels for residential purposes, the witness said that 28 to 30 lots could be laid out on the land and that each would be worth $7,000, making the plaintiffs' land worth over $200,000. He further testified that the land, if rezoned for C—2 use, would be worth $225,000.

Gerwin Rourbach's opinion was that the highest and best use of the plaintiffs' property would be residential. He stated that Busse Highway was not a heavily traveled street and that it should not be used as a demarcation line to separate commercial and residential land uses. It was his opinion that the residential property directly across Busse Highway was more influential in determining or fixing the character of the area than the nonresidential property, for example to the north of the plaintiffs' parcels.

The defendants contend that the holding of the trial court was not contrary to the manifest weight of the evidence and should not have been disturbed. Too, the defendants say the appellate court did not follow the standards laid down by this court to determine the validity of a zoning ordinance. It is clear from many holdings of this court that a zoning ordinance will be upheld if it bears any substantial relationship to the public health, safety, comfort or welfare. An ordinance will be presumed to be valid, and the one attacking an ordinance bears the burden of demonstrating its invalidity. The challenging party must

establish by clear and convincing evidence that the ordinance, as applied, is arbitrary and unreasonable and bears no substantial relation to the public health, safety or welfare. (*County of Cook v. Priester*, 62 Ill. 2d 357, 367-68; *Duggan v. County of Cook*, 60 Ill. 2d 107, 110-11; *Grobman v. City of Des Plaines*, 59 Ill. 2d 588, 592.) The foundation for this judicial posture was described in *La Salle National Bank v. City of Evanston*, 57 Ill. 2d 415, 428:

> "These rules are based upon a recognition that zoning is primarily a legislative function, subject to court review only for the purpose of determining whether the power, as exercised, involves an undue invasion of private constitutional rights without a reasonable justification in relation to the public welfare. (*People ex rel. Joseph Lumber Co. v. City of Chicago*, 402 Ill. 321; *Morgan v. City of Chicago*, 370 Ill. 347.) Where it appears, from all the facts, that room exists for a difference of opinion concerning the reasonableness of a classification, the legislative judgment must be conclusive. (*Krom v. City of Elmhurst*, 8 Ill. 2d 104.)" See also *Grobman v. City of Des Plaines*, 59 Ill. 2d 588, 593.

This court in *La Salle National Bank v. County of Cook*, 12 Ill. 2d 40, 46-47, noted a number of factors that are relevant and might be considered by a trial court in weighing the validity of a zoning ordinance:

> "(1) The existing uses and zoning of nearby property, [citations], (2) the extent to which property values are diminished by the particular zoning restrictions, [citations], (3) the extent to which the destruction of property values of plaintiff promotes the health, safety, morals or general welfare of the public, [citations], (4) the relative gain to the public as compared to the hardship imposed upon the individual property

owner, [citation], (5) the suitability of the subject property for the zoned purposes ***, [citations], and (6) the length of time the property has been vacant as zoned considered in the context of land developed in the area in the vicinity of the subject property. [Citations.] " (See also *Duggan v. County of Cook,* 60 Ill. 2d 107, 111-12.)

The court in *La Salle National Bank* also observed that a trial court, sitting without a jury, is to weigh conflicting testimony and that its findings will not be disturbed unless they were contrary to the manifest weight of the evidence. 12 Ill. 2d 40, 48; see also *Atkins v. County of Cook,* 18 Ill. 2d 287, 297.

A review of the record requires us to conclude that the trial court's holding that the plaintiffs failed to overcome the presumption of the validity of the ordinance and that the ordinance, as applied, "is reasonable and valid and bears a reasonable relationship to the public health, safety, welfare and morals" was not contrary to the manifest weight of the evidence. That evidence shows that though there are mixed uses of property in the locality, the area, including the plaintiffs' property, is primarily residential in character; that the proposed uses of the plaintiffs would severely alter if not destroy the predominantly residential quality of the neighborhood; and that the presence of some commercial uses in the general area does not justify a change in the present zoning classification. Further, it is not really denied that the plaintiffs' property can be developed successfully as zoned (see *Duggan v. County of Cook,* 60 Ill. 2d 107, 112); the plaintiffs simply would prefer to develop it in another manner. Too, the record shows that Busse Highway cannot be regarded as a natural boundary between the plaintiffs' property and property on the other side of the street. It is a "lightly traveled" road and does not destroy the natural affinity or unity between the properties that border on

either side of it.

The plaintiffs did present testimony that the value of their property would be substantially increased by the reclassification. However, the force of this testimony was significantly reduced by the testimony of the defendants' experts and of the plaintiffs' own experts on cross-examination. It is fair to say that on this question the testimony was conflicting, and we judge that the findings of the trial court are not contrary to the manifest weight of the evidence. Moreover, an observation we made in *Grobman v. City of Des Plaines,* 59 Ill. 2d 588, 595-96, is applicable:

> "The lot would have been worth more if the ordinance restriction was not effective, but that is true in probably all cases of restrictions on property. While that factor is to be considered in determining the validity of the zoning ordinance, it is not of itself determinative, particularly where, as here, the proposed use would depreciate the value of other property in the area. *Bolger v. Village of Mt. Prospect,* 10 Ill. 2d 596, 602; *People ex rel. Alco Deree Co. v. City of Chicago,* 2 Ill. 2d 350, 357-358."

For the reasons stated, the judgment of the appellate court is reversed and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*