JAMES STANEK *et al.*, Plaintiffs-Appellees, *v.* THE COUNTY OF LAKE, Defendant.—(JAMES ROBERT REARDON *et al.*, Intervening Petitioners-Appellants; THE VILLAGE OF WAUCONDA, Intervening Petitioner.)

Second District   No. 76-511

Opinion filed May 22, 1978.

Wallace B. Dunn, of Highwood, and Albert S. Salvi, of Lake Zurich, for appellants.

Robert J. Hauser, of Sullivan, Smith & Hauser, of Waukegan, for appellees.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

This is a zoning case in which James and Virginia Reardon, owners of adjoining property and intervening petitioners, appeal from the circuit court's ruling that the existing zoning classification is unconstitutional and void as to the plaintiffs' property.

The land in question is a 5-acre tract fronting on a 40-foot improved road known as Bonner Road (County Highway 81), which runs east and west through the Village of Wauconda. The tract is almost at the corner of Bonner Road and Garland Road which runs north and south.

The plaintiff is a police officer presently employed as such for the village of Hoffman Estates. He bought the tract in question—which was originally about 4.5 acres—in July 1974, believing it to be zoned AG (agriculture) and thus permitting the operation of a dog kennel. He then discovered it was zoned UR-1 (residential) which did not permit the operation of a dog kennel. Upon learning this, the plaintiffs purchased an additional strip of land along one side of the original tract in order to have 5 acres, which was the amount of land required for AG zoning.

After he had 5 acres of land, the plaintiff applied to the county for a change in the zoning of his land from UR-1 to AG, and submitted a plan for the building and operation of a dog kennel serving the public on a commercial basis.

Section 5 of "An Act in relation to county zoning" (Ill. Rev. Stat. 1975, ch. 34, par. 3158) provides that a zoned municipality may object in writing to any proposed amendment of the county zoning laws which affects lands within 1½ miles of its limits and unless the county approves the zoning change by a three-fourths majority vote the zoning change fails. The subject property is within 1½ miles of the village limits of Wauconda, and the village filed an objection to the proposed zoning. After consideration, a majority of the county board, but less than three-quarters of the members voting, approved the change in zoning. However, since less than three-fourths of the members voting approved, the zoning change requested could not be granted.

The plaintiffs then filed suit against the county alleging that the present zoning was unconstitutional as to their land in that it bore no reasonable relationship to the health, welfare, safety or comfort of the public and prevented the highest and best use of the land, which they alleged was agricultural use, including (by amendment of the complaint) a dog kennel.

The village of Wauconda sought and was granted leave to intervene and subsequently leave to intervene was granted to adjoining landowners, James and Virginia Reardon. After a trial on the merits, the trial court found the county zoning ordinance unconstitutional and void and enjoined the county from enforcing it as to the plaintiffs' land.

It appears from the record that the plaintiffs first submitted their plan to the county on the basis of a 12-dog kennel; however, at trial the testimony indicated they intended to build a boarding and grooming kennel for 24 dogs and also would board and groom cats. James Stanek testified that he had from the beginning intended to use the property for a commercial dog kennel and that the soil was eroded, did not drain properly and was not suitable for growing crops. He also contended there was not sufficient stable land for more than one residence on the property as much of it could not be built on due to poor drainage. He submitted several photographs as exhibits showing a hay field, a silo and farm animals, such as horses, cows and sheep, grazing on adjoining property. These photos were apparently submitted as evidence establishing that the uses in the area were strictly agricultural, even though the land was zoned residential. In addition, Mr. Stanek testified that across the road from the plaintiffs' property, almost at the corner of Bonner and Garland Roads, there was a body shop and nearby was a sand quarry and a landfill, which he described as a "garbage dump." This was located along and to the

north of Bonner Road. The plaintiff argues that these nonresidential uses so close by had already adversely affected the residential character of the neighborhood and, in fact, his proposed kennel would serve as a buffer zone between the more undesirable commercial properties which now existed nearby and the residential areas to the south of Bonner Road. A witness for the plaintiffs—the neighbor who sold them the additional strip of land necessary to complete the needed 5 acres—testified that she did not believe that the presence of the dog kennel would depreciate her property. The professional engineer, who designed the proposed kennel building, testified that only a little more than half of the area of the land in question was suitable for building. He also testified that the noise level, considering the acoustical design of the proposed building, would be very low—not much more than a whisper would reach the outside, if the dogs were kept in the building, as the plaintiff proposed to do.

A real estate broker, called by the plaintiffs, testified that the property as presently zoned was worth less than the plaintiffs paid for it but would be worth more than the plaintiffs paid for it, if it was zoned AG. In answer to a question on cross-examination as to whether the proposed rezoning would constitute spot zoning, she replied that it would. The director of the Lake County zoning board of appeals testified that in his opinion the proposed change was compatible with the residential character of the area and the kennel would serve as a buffer zone between the residential property to the south of Bonner Road and the light industry operations to the north of Bonner Road. He did not see any adverse financial impact from the kennel operation. However, he conceded that it would require careful management to avoid any visual or auditory adverse effect. On cross-examination he said that the trend of development in the area of the plaintiff's property, south of Bonner Road, was residential and not commercial.

A professional real estate appraiser testified on behalf of the intervenors, the Reardons, that their property would be depreciated in value by the presence of a dog kennel on the adjoining property. His opinion was based on the belief that the kennel building was not conformable to the residential character of the neighborhood and it could not be screened off except by a high fence which was equally undesirable.

By stipulation between counsel for the village and the plaintiffs it was agreed that the village had a water connection available approximately 200 feet and a sewer line approximately 400 feet from the plaintiffs' property. This stipulation apparently was introduced for the purpose of countering the plaintiffs' contention that about half of their property was not suitable for building, because of soil conditions which precluded a satisfactory septic system on that portion of it.

This is not the usual zoning case where a municipal body is appealing

the judgment of the trial court. Only the adjoining property owners, Reardons, are appealing.

One of the witnesses for the plaintiffs was Cranston Byrd, the director of planning for the county, who testified that he saw no conflict with either the county or the village comprehensive plans in allowing the rezoning of the plaintiffs' property to AG. On cross-examination, Mr. Byrd testified that the proposed kennel would not be inconsistent with the present residential trend and would not, in his opinion, amount to "spot" zoning.

James Reardon, an intervening petitioner, testified that he had acquired his property by purchase over a number of years; that it now amounted to about 20 acres; that he thought of it as an investment, meaning to subdivide it eventually and annex it to the village. He described his anticipated profit from doing so as a "retirement plan." His objection to the proposed zoning was that it would depreciate the value of his property. He also testified that his property abutted the plaintiffs' for 400 feet; that he believed the sounds and smells from the kennel would be noticeable and objectionable to him and his property would be depreciated by having a commercial enterprise adjacent to it. On cross-examination, he admitted that his residence was some 1200 to 1300 feet from the proposed kennel site. He also admitted that he kept animals on his property for as long as he had owned the property and that he now had sheep and cows on his property.

The adjoining neighbor on the other side of the plaintiffs' property— Marjorie Holmes—made no objection. She testified for the plaintiffs saying she did not believe the proposed operation would decrease the value of her property.

■■ It is fundamental that a landowner has a right to use his land in any lawful manner, not inconsistent with the public interest. (*Columbus Park Congregation of Jehovah's Witnesses, Inc. v. Board of Appeals* (1962), 25 Ill. 2d 65; *Pioneer Trust & Savings Bank v. McHenry County* (1968), 41 Ill. 2d 77.) Since it has not been shown by the evidence submitted here that the proposed use by the plaintiffs is inconsistent with the public interest, we do not consider it a sufficient reason to prohibit such use, that the intervenors' anticipated profits from subdividing *their* land would be diminished by plaintiffs' use of *their* own land.

Appellant Reardon cites *La Salle National Bank v. City of Evanston* (1974), 57 Ill. 2d 415, and *Grobman v. City of Des Plaines* (1975), 59 Ill. 2d 588, as sustaining his contention that the burden is on the plaintiffs to overcome presumptive validity of the existing zoning classification and that the plaintiffs failed to do so. In both of these cases, when the ordinance was challenged as being arbitrary and unreasonable, the municipality established by competent evidence that the ordinance was

not arbitrary and unreasonable as to the plaintiffs' property but was a legitimate exercise of the police power, having a substantial relationship to the public health, safety and welfare. In the present case, neither the county nor the village presented any witnesses, either explaining and upholding the public interest in maintaining the existing residential zoning as to the plaintiffs' property or indicating that the public health, safety or comfort would be adversely affected by the proposed rezoning. The village presented some exhibits showing the existing zoning classification and the county and the village comprehensive plans for the future were submitted. Apparently this was in order to imply, by these exhibits, that the zoning change requested by the plaintiffs would be inconsistent with these long range plans. The exhibits themselves, however, could not be considered as proving that a deviation from these plans in this particular instance would have an adverse effect on long range planning or on the public health, safety and comfort.

Reardon's own testimony was mainly related to the financial effect the proposed change would have—not on his present property—but on the possible future subdividing of his present property. While he touched on the possible unsightliness of the proposed kennel building, this esthetic consideration was not a significant factor in view of the remoteness of Reardon's house from the proposed site. In any event, one landowner does not have a vested interest in an unobstructed view across, or in a pleasing view of, his neighbors' lands.

We are aware of those cases holding that a purchaser of land is entitled to rely on the zoning classification which existed when he bought his land. (See *Chicago & North Western Ry. Co. v. City of Des Plaines* (1968), 97 Ill. App. 2d 201.) Such cases are not applicable here, however, because Reardon bought his last acreage in 1964 and the land was subject to AG zoning at that time. It was not changed to residential zoning until 1966, as testified to by Reardon himself. Therefore, his acquisition was not made in reliance upon the zoning classification he now seeks to maintain.

The trial judge determined that the proposed use by the plaintiffs was not inconsistent with the public interest and further, that the zoning restrictions were not related to the public health, safety and welfare. The triers of fact are in a superior position to that of a reviewing court, and where the testimony is contradictory in the trial of a zoning case, the weight to be accorded testimony is a matter to be determined by the trial court and its findings will not be disturbed unless manifestly against the weight of the evidence. *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 48; *Atkins v. County of Cook* (1960), 18 Ill. 2d 287, 297.

■■ After examining the record, we are satisfied the trial court was justified in its determination. In our opinion, the plaintiffs sustained the burden of proof required to establish that the zoning classification which

denied them the right to operate a dog kennel on their property was unreasonable and arbitrary, and that the present restriction on the plaintiffs' property is not reasonably related to the community's health, safety, comfort or welfare so as to justify the existing restriction on the ground of public interest. Further, in our opinion, the evidence adduced at the trial was on balance favorable to the plaintiffs' case and certainly the judgment of the trial court was not against the manifest weight of the evidence. We therefore affirm the judgment of the trial court.

The judgment of the circuit court of Lake County is affirmed.

Judgment affirmed.

NASH and WOODWARD, JJ., concur.