JOHN W. TWIGG *et al.*, Plaintiffs-Appellees, v. THE COUNTY OF WILL, Defendant-Appellant.

Third District   No. 3—93—0267

Opinion filed January 20, 1994.

James Glasgow, State's Attorney, of Joliet (John X. Breslin and Judith Z. Kelly, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellant.

Herschbach, Tracy, Johnson, Bertani & Wilson, of Joliet (Thomas R. Wilson, of counsel), for appellees.

JUSTICE BARRY delivered the opinion of the court:

Defendant County of Will appeals from a judgment of the circuit court of Will County declaring defendant's county zoning ordinance void and unconstitutional as applied to the property of plaintiffs John W. and Anna Twigg and granting injunctive relief to restrain defendant from enforcing its A-1 (agricultural) zoning regulation with respect to the subject real estate. The issue in this appeal is whether the trial court's decision is contrary to the manifest weight of the evidence. For reasons that follow, we affirm.

According to the record on appeal, plaintiffs purchased a 35-acre parcel of land in Peotone Township zoned A-1 for $3,750 per acre in 1991. John Twigg testified that he knew the zoning classification at the time of the purchase, but he was not aware that the corresponding county ordinance required a minimum of 10 acres per residential unit. He testified that he had intended to divide the real estate into four parcels to provide separate residential lots for himself and his

three adult children and to raise and keep horses. However, because of complaints of an adjoining property-owner, plaintiffs sold off the eastern-most 10 acres for $50,000. They then proposed to divide the remaining acreage into two 10-acre lots for one son and their daughter, and to split the last five acres into two lots of 2½ acres each for themselves and their other son. Because plaintiffs' plans for the five acres did not conform with the A-1 classification, they petitioned the Will County Board to rezone the five acres from A-1 to E-2, which permits country residential lots of 2½ acres. The board denied plaintiffs' application, and they brought their complaint for declaratory and injunctive relief in the circuit court.

At trial, plaintiffs presented expert testimony of Thomas Murphy, a land use planner, and Charles Southcomb, a real estate appraiser. Murphy testified that E-2 zoning was a good use of the five-acre parcel and that it would have a positive effect on the future development of the surrounding area in that it would increase tax values while providing attractive residences in the immediate area. He further opined that the current A-1 zoning had no practical application and its 10-acre limitation was "somewhat arbitrary" as applied to plaintiffs' proposed use. As a former director of the Will County Regional Planning Commission, Murphy testified that in his opinion the county had assigned A-1 classification arbitrarily to all tracts in Will County that were not otherwise used for nonagricultural purposes when the county zoning ordinance was adopted in 1978. He testified that the county had a history of turning down all applications for rezoning to develop parcels of less than 10 acres. Finally, Murphy testified that denial of plaintiffs' proposed use of the five-acre parcel for two single-family residences adjacent to their daughter's horse-keeping operation would do nothing to preserve the agricultural character of the surrounding area.

Southcomb testified that the plaintiffs' proposed use of the five-acre parcel as two lots zoned E-2 was the highest and best use. He testified that the market value of the land as currently zoned was $5,000 per acre, and that using a comparable sales analysis it would be $12,000 per acre if rezoned E-2.

James Shelby, director of planning for Will County, and Bruce Clover, a farmer in the immediate area, testified on defendant's behalf. Shelby testified that there were no parcels zoned E-2 within a 1½-mile radius of the subject property. However, he admitted that there are about five nonconforming parcels with residences on less than 10-acre lots within that 1½-mile radius. These all had been in existence prior to the enactment of the 1978 zoning ordinance. Shelby testified

that residential development was generally incompatible with agricultural use because the homeowners complained about farming practices. He also expressed concern about setting a precedent for residential development if the rezoning were allowed in this case.

Clover testified that he had leased the subject real estate from the prior owner and had himself netted about $150 per acre per year on a crop-share basis. He stated that he bore no animosity toward the plaintiffs, but that agricultural use was incompatible with residential development to the extent that mail boxes and garbage cans along the roadways might hinder the movement of farm machinery, or children playing in the area might damage terraces and downspouts. Clover agreed that the soil was "excellent" for growing crops, including alfalfa, and for pasturing horses.

At the conclusion of all testimony and closing arguments of counsel, the court took the matter under advisement. On February 22, 1993, a written decision was entered granting declaratory and injunctive relief for plaintiffs, as aforesaid.

■ Zoning is primarily a legislative function, and it is within the province of local governmental bodies to determine the use of land and to establish zoning classifications. Accordingly, a zoning ordinance will be deemed constitutional and its validity upheld if it bears any " 'substantial relationship to the public health, safety, comfort or welfare.' " (*La Grange State Bank v. County of Cook* (1979), 75 Ill. 2d 301, 307-08, 388 N.E.2d 388, 390-91, quoting *Tomasek v. City of Des Plaines* (1976), 64 Ill. 2d 172, 179-80, 354 N.E.2d 899, 903.) A party challenging the validity of a zoning ordinance must establish both the invalidity of the existing zoning ordinance and the reasonableness of the proposed use of the property. (*Glenview State Bank v. Village of Deerfield* (1991), 213 Ill. App. 3d 747, 758, 572 N.E.2d 399, 407.) The party challenging the ordinance has the burden of proving by clear and convincing evidence that the application of the ordinance to the property is "unreasonable and arbitrary and bears no substantial relation to public health, safety, morals, or welfare." (*Cosmopolitan National Bank v. County of Cook* (1984), 103 Ill. 2d 302, 310, 469 N.E.2d 183, 187.) An appellate court may not reverse the trial court's findings unless such findings are against the manifest weight of the evidence. (*Glenview State Bank*, 213 Ill. App. 3d at 759, 572 N.E.2d at 408.) The trier of fact is in a better position to assess the credibility of the witnesses and their opinions, and the reviewing court may not reverse simply because the reviewing court may have come to a different conclusion. *Glenview State Bank*, 213 Ill. App. 3d at 759-60, 572 N.E.2d at 408.

There are eight factors to consider in determining whether a zoning ordinance is valid. The first six factors were listed in *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46-47, 145 N.E.2d 65, 69. They are: (1) the existing uses and zoning of nearby property; (2) the extent to which property values are diminished by the particular zoning restrictions; (3) the extent to which the destruction of property values of plaintiff promote the health, safety, morals or welfare of the public; (4) the relative gain to the public as compared to the hardship imposed upon the individual property owner; (5) the suitability of the subject property for the zoned purposes; and (6) the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the subject property. The final two factors, set forth in *Sinclair Pipeline Co. v. Village of Richton Park* (1960), 19 Ill. 2d 370, 378, 167 N.E.2d 406, 411, are: (7) the care that the community has taken to plan its land use development, and (8) the community need for the proposed use.

■ Although no one factor is controlling, the first factor—existing uses and zoning of nearby property—is "of paramount importance." (*Glenview State Bank*, 213 Ill. App. 3d at 760, 572 N.E.2d at 408.) Defendant argues in this appeal that this factor weighs heavily in its favor. We do not agree. As plaintiffs correctly point out, the quarter section in which the subject property is situated is divided into nine other ownerships, three of which contain less than 10 acres. Plaintiffs' five-acre parcel lies in the northwest corner of the quarter section, and within the 1½-mile radius surrounding it, several residences on parcels of less than 10 acres are established. Although none are zoned E-2 and were existing prior to the 1978 ordinance, the uses of nearby property are not inconsistent with the E-2 use plaintiffs propose for the five-acre parcel in question. The trial court specifically noted that the existing, nonconforming uses of the surrounding property did not support the county's position in this case. We find that the trial court's conclusion is not contrary to the manifest weight of the evidence.

With regard to the second factor, defendant argues that the trial court mistakenly focused on the property's increase in market value if rezoned E-2 instead of the diminution of value, if any, as currently zoned A-1. We agree in part that the fact that rezoning would enhance the property's value is not determinative. However, the evidence presented to the court established that the highest and best use of the property was E-2, and there was no evidence that the value of surrounding property would be diminished by plaintiffs' proposed use. Thus, to the extent that evidence of property value was presented, we

do not find that the trial court erred in weighing this factor in plaintiffs' favor.

The third and fourth factors, similarly, support the trial court's conclusion. Although there is no question that public morals are not at risk if the rezoning is granted, there was some testimony that farming practices are not compatible with residential use. On the other hand, plaintiffs' expert witnesses testified that the A-1 limitation was not substantially related to issues of public health, safety or general welfare. Plaintiffs propose to build two residences on five acres adjacent to their daughter's horse-keeping operation—one for themselves, and the other for an adult son. Even defendant's expert witness could not deny that the horses were an agricultural enterprise. Defense witnesses' suggestion that rezoning in this case would set an unfavorable precedent for future property owners was purely speculative, self-serving and appropriately discounted by the trial court in weighing the parties' evidence. And, inasmuch as plaintiffs' proposed use of the entire 25-acre parcel was to unite his family and promote animal husbandry, thereby preserving the agricultural character of the area, there is little, if any, public gain to be realized by enforcing the A-1 classification, and great hardship would be imposed on plaintiffs to deny the zoning change.

Factors five and six, as the court noted in its written decision, do not establish the invalidity of the ordinance. There is no dispute that the land is suitable for agricultural use and that it was actively farmed prior to plaintiffs' purchase of it.

With respect to factor seven, the evidence tended to show that the current zoning of the area, including plaintiffs' tract, was assigned in an arbitrary manner without considering the several nonconforming uses existing when the land-use plan was adopted and the zoning ordinance was enacted. The former planning director testified that he had expressed his disagreement with the across-the-board A-1 classification, but that he was overruled by the time the plan was presented for approval in 1978. A later land resource management plan adopted in 1990 pursuant to the State Local Land Resource Management Planning Act (50 ILCS 805/1 (West 1992)) similarly failed to take into consideration the various residences on parcels under 10 acres surrounding plaintiffs' property. Thus, despite the county board's consistent denial of petitions for rezoning, the trial court's conclusion that the land use plan was not carefully designed is supported by the evidence of record.

Lastly, although no community need for rezoning was demonstrated (factor eight), a need for rezoning was shown to exist for

plaintiffs in order to accommodate their interest in uniting with their adult children in a country environment. Mr. Twigg testified that he had looked at other parcels in other townships, but the size and selling price made this particular 35-acre tract appropriate for his purposes. The promotion of family unity and animal husbandry in this case is consistent with the community interest in preserving A-1 agricultural zoning generally.

Although no one factor definitively established the invalidity of defendant's ordinance in this case, it is clear that the court gave great weight to its finding that plaintiffs' proposed use of the remaining 25 acres of the original 35-acre land purchase was generally in harmony with both the current A-1 agricultural zoning and existing nonconforming uses for smaller residential parcels in the surrounding area. In our opinion, the court acted within its discretion in analyzing the factors and weighing them within the context of the evidence presented here.

In sum, we find that the trial court's conclusion that enforcement of the zoning ordinance prohibiting plaintiffs' proposed development of the five-acre parcel "is arbitrary and bears no substantial or reasonable relation to public health, safety, morals, comfort and general welfare" is not contrary to the manifest weight of the evidence. Accordingly, we affirm the court's judgment declaring the ordinance void and unconstitutional as applied to plaintiffs' property and enjoining the defendant from prohibiting the building of two residences on the five-acre parcel as proposed.

The judgment of the circuit court of Will County is affirmed.

Affirmed.

McCUSKEY and LYTTON, JJ., concur.