(Nos. 31789, 31795.—

THE CITY OF CHICAGO, Appellee, *vs.* FRANK VACCARRO *et al.*—(CHARLES J. MERAS *et al.*, Appellants.)

*Opinion filed March 22, 1951.*

GEORGE A. ASKOUNIS, and JOHN R. COLLIS, both of Chicago, for appellants Charles J. Meras *et al.;* and HETH, LISTER & FLYNN, of Chicago, for appellants The Trust Company of Chicago *et al.*

JOHN J. MORTIMER, Corporation Counsel, of Chicago, (JOHN C. MELANIPHY, and FRANCIS S. LORENZ, of counsel,) for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Appellee, the city of Chicago, on April 13, 1949, filed its petition in the circuit court of Cook County seeking to condemn ten separate parcels of land, containing in the aggregate 21 vacant lots, for the purpose of extending, expanding and improving the airport facilities of the Chicago Municipal Airport, also known as the Chicago Midway Airport. The appellants The Trust Company of Chicago, as trustee under certain trust agreements, and Basil and Julia Stevens, the owners in fee simple of parcels 3, 4, 7, 9 and 10, and the appellants Charles J. and Jane C. Meras, the owners in fee of parcels 2 and 8 were made parties defendant to the petition. A jury was empaneled and damages ascertained.

The Chicago Municipal Airport is located within the city of Chicago. It extends from West Fifty-fifth Street on the north to West Sixty-third Street on the south and from Central Avenue on the west to Cicero Avenue on the east. The terminal or administration building of the airport is west of Cicero Avenue and extends from about the middle of the block between Fifty-sixth Street and Fifty-seventh Street to the middle of the block between Fifty-eighth and Fifty-ninth streets. It contains ticket offices, waiting rooms, and a restaurant operated by Marshall Field & Company.

The parking lot now in use as a part of the facilities of the airport adjoins the terminal building on the west side of Cicero Avenue and extends from about two hundred feet south of Fifty-sixth Street to approximately Fifty-eighth Street. All of the properties involved in the condemnation proceedings are east of Cicero Avenue, between Fifty-seventh and Fifty-ninth streets, and either front upon Cicero Avenue or upon Keating Avenue, which is the first street east of Cicero. The city owns 99 lots immediately adjoining the 21 lots sought to be condemned, and its purpose in seeking to acquire the additional lots is to consolidate and use all of the lots, both those it owns and those it seeks to condemn, as a parking lot for automobiles, in connection with the airport and as one of the facilities thereof. This parking lot will include all of the property between Cicero and Keating from the middle of the block between Fifty-fifth and Fifty-sixth streets to the middle of the block between Fifty-eighth and Fifty-ninth streets, except 50 feet fronting on Cicero Avenue between Fifty-seventh and Fifty-eighth streets, owned by Michael Caffarello and upon which he operates a restaurant. This Caffarello property the city is not seeking to acquire.

The defendants The Trust Company of Chicago, Basil Stevens and Julia Stevens filed a traverse to the petition, the 12th paragraph thereof, which was added by amendment, being as follows: "That the property being taken and proposed to be taken is being taken for a private use and not for a public use and that the property already acquired by the city is sufficient for the needs and purpose of the city for parking facilities without the taking of the property proposed to be taken in this proceeding."

On the trial of the issues tendered by the traverse, held preliminary to the hearing on the question of value, the petitioner introduced in evidence the ordinance directing that the property be acquired, a map of the property, a stipula-

tion that the use to be made of the property will be parking areas for the parking of automobiles for a charge, a stipulation that petitioner owns 99 lots immediately adjoining the 21 lots sought to be condemned and that this condemnation proceeding is an attempt by the city to consolidate and use all of said 120 lots for parking purposes, and a lease agreement between the city of Chicago and Parking Associates' Corporation, revocable on thirty days' notice, leasing the airport parking lot on a minimum rental and percentage basis.

To prove the absence of any necessity for the condemnation of these various lots, the defendants filing the traverse offered the testimony of Charles B. McNallis, who is the assistant supervisor of the airport and, as such, has supervision of the airport parking lot, and the testimony of Martin Meyer, an architect and engineer. McNallis testified that the present airport parking lot can accommodate 722 cars, that the cars are parked diagonally, and there are driveways between each row of diagonally placed barriers to provide ingress and egress from the diagonal facilities provided for parking; that during the summer months the parking facilities are entirely utilized from one o'clock to six on Sundays, and from two o'clock to about five o'clock on Saturdays in the afternoon; that during those months automobiles have many times been turned away from the parking lot, a long line of automobiles forming on Cicero Avenue for the purpose of entering the parking lot, and that there have been such lines extending from Fifty-fifth Street all the way down; that during the winter months it depends upon the weather; that if the weather is nice on Sunday there is a full parking lot; that the peak use for other hours of the day comes about noon when people come into Field's restaurant, and the parking lot is 65 to 70 per cent filled, and then again in the evening between four and seven o'clock P.M., there is nearly the same

amount, and that in the intervening hours the occupation would drop to about 40 to 50 per cent. The witness Meyer testified that the 99 lots owned by the city on the west side of Cicero Avenue, if utilized for diagonal parking with driveways for two-way traffic, would provide parking space for 870 cars, that if the driveways were for one-way traffic, the capacity would be increased to a total of 1044 cars, and if the cars were parked perpendicularly, the capacity would be increased to a total of 1460 cars.

The court found the issues on the traverse for the petitioner, and a jury was empaneled to try the issues as to the value of the property taken. Three witnesses testified for appellee and two for appellants as to the market value of the land. Two of appellee's witness placed the value per front foot of parcel 2 at $80, of parcels 8 and 3 at $75, parcels 4 and 7 at $80, and parcel 10 at $22. One of their witnesses placed the value of parcel 2 at $75, parcels 8 and 3 at $70, parcels 4 and 7 at $75, and parcel 10 at $20. None of appellee's witnesses agreed as to the value of parcel 10, one witness placing it at $18, one at $20, and one at $17. Appellants' witnesses both testified to market value of $200 per front foot for parcels 2, 8, 3, 4, and 7, and $50 per front foot for parcels 9 and 10.

The evidence shows that parcels 2, 8, 3, 4, and 7 front on Cicero Avenue and parcels 9 and 10 on Keating Avenue. Parcels 2, 3, and 4 are in the middle of the block between Fifty-seventh and Fifty-eighth streets. Parcel 6 lies immediately south of Fifty-eighth Street, and parcel 7 adjoins parcel 6 on the south. Parcel 8 is the third lot north of the alley running east and west in the middle of the block between Fifty-eighth and Fifty-ninth streets. Parcels 9 and 10 comprise all of the lots between Fifty-eighth and Fifty-ninth Streets which lie north of the alley running east and west in the middle of the block and east of the alley running north and south in the block. Parcel 9 has a frontage on Keating Avenue of 190 feet and lies imme-

diately north of the east and west alley. Parcel 10, with a frontage of 60 feet on Keating Avenue, lies immediately north of parcel 9 and immediately south of Fifty-eighth Street. There are sidewalks, paving, sewer and water installed on Cicero Avenue. There is no curbing on Keating Avenue, no pavement and no water, but there is a sewer in the street, which is stub ended at the curb line.

Sol Shapiro testified on behalf of appellee that, as a real-estate broker representing the owner in the summer of 1946, he negotiated the sale of a vacant lot fronting on the east side of Cicero Avenue between Sixty-first and Sixty-second streets, the sale being for a cash consideration of $1500, which was a price of $60 per front foot.

Manny Schraiberg, a witness for appellants, testified he purchased, in the fall of 1947, a piece of property at the northeast corner of Archer and Cicero avenues, for a cash price of $40,000; that the property was vacant when purchased and that the witness was, at the time of the purchase and had been for ten years prior thereto, operating an open air market on the property; and that the property is an irregular shaped lot, lying 83 feet on Cicero Avenue, 127 feet on Archer Avenue, and tapering off to 57 feet at an alley. The map introduced in evidence as petitioner's exhibit 2 shows Archer Avenue at its intersection with Cicero to be one block north of Fifty-third Street.

Michael Caffarello testified on behalf of appellants that during 1946 or 1947 he purchased the lots on Cicero Avenue, in the block between Fifty-seventh and Fifty-eighth streets, on which he is operating a restaurant; that the lots are directly opposite the entrance to the airport and were vacant when he bought them; and that the price he paid was $10,000, which was $200 per front foot.

The three witnesses who testified for appellee upon the question of value, as above mentioned, were Joseph P. Lavin, Cornelius Baker and Floyd G. Dana; and the two witnesses who testified for appellant, as above mentioned

on that question, were Charles V. McErlean and H. O. Lane. These witnesses were all real-estate brokers of many years experience and high qualifications.

Lavin was a real-estate broker and appraiser, had been in that business for 30 years and was familiar with the area surrounding the airport, and its development, all of which he described at length.

Baker had been in the real-estate business, selling properties both vacant and improved, for 25 years, and has been a land appraiser in the Cook County assessor's office, employed full time five days a week for 19 years. He testified that he carries on the brokerage business with his son on the side, that he had known the airport area for over 25 years, and had assessed property in the area each quadrennial, and that his activities in both selling and appraising had been all over Cook County.

The witness Dana has been a real-estate broker for the past 27 years, is a member of various real-estate boards, and has served as former president of the Chicago Real Estate Board and upon the appraisal committee of that board. He testified that he had made appraisals for various saving and loan associations and other institutions, and sells a good many pieces of property throughout the year, his business being confined to the south and southwest sides; and that he had made an appraisal of the property in the case for the purpose of testifying.

Charles V. McErlean, one of appellants' witnesses, testified he had been in the real-estate business for 53 years, his operations during that time being mainly on the southwest side of Chicago.

H. O. Lane, the other witness for appellants, testified he had been engaged in the real-estate business since 1912, and that he is, and for 25 years had been, familiar with the property in question in this case.

All of these witnesses upon the question of value testified that the highest and best use of the property being

condemned was for commercial purposes, Lavin testifying that parcel 2 was limited as to commercial uses. They all enumerated the elements they considered in arriving at an opinion as to the highest and best use of the property and its value for such use. The witness Dana stated that the lots on Cicero Avenue being condemned and the lot between Sixty-first and Sixty-second street which sold for $1500 have the same identical capacity for use and are zoned for commercial use, but, upon an inspection of the zoning map, admitted that he was mistaken in testifying the properties were both zoned commercial, since the map showed the property sold was zoned for business, and that in saying the two properties had the same capacity as to use, it was quite possible he was mistaken.

The jury, after viewing the premises and hearing the evidence, returned a verdict fixing the value of parcels 2 and 8 belonging to defendants Charles J. Meras and Jane C. Meras at $90 per front foot or $6750 for parcel 2, and $80 per front foot or $2000 for parcel 8, and the value of parcels 3, 4, 7, 9 and 10, belonging to the defendants The Trust Company of Chicago, Basil Stevens and Julia Stevens at $80 per front foot or $2000 for parcel 3, $85 per front foot or $4250 for parcel 4, $85 per front foot or $4250 for parcel 7, $17.50 per front foot or $3325 for parcel 9, and $22.50 per front foot or $1350 for parcel 10.

The defendant Charles J. Meras, Jane C. Meras, The Trust Company of Chicago, Basil Stevens and Julia Stevens filed motions for a new trial, one of the grounds of which was that the verdict was the result of improper evidence which was introduced when the jury was taken to view and consider other property not involved in the case. The motion was denied, and the court entered judgment on the verdict. Charles J. Meras and Jane C. Meras have appealed from that part of the judgment relating to parcels 2 and 8, their appeal being case No. 31789. The defendants The Trust Company of Chicago, Basil Stevens and

Julia Stevens have appealed as to parcels 3, 4, 7, 9 and 10, their appeal being case No. 31795. The two appeals have been consolidated and will be disposed of in one opinion.

Counsel for the appellants in both cases complain (1) that the jury, when taken to view the property being condemned, was permitted to view not only that property but other property not being condemned, which view of other property constitutes the admission of improper and prejudicial evidence and is reversible error; and, (2) that the verdict of the jury, although within the range of the testimony as to value, should be set aside because the result of improper evidence and contrary to the manifest weight of the competent evidence, and because the record indicates the jury was influenced by passion and prejudice, and, as a result of prejudicial statements, disregarded completely competent evidence of recent sales introduced by appellants.

The appellants in case No. 31795 also contend that the taking of appellants' property is not necessary for any authorized public purpose and constitutes excess condemnation. These appellants do not question the right of the city to establish or expand airport facilities or to establish parking lots under proper circumstances, but they contend that the ultimate result of the judgment appealed from is to take appellants' property, not for airport expansion, but to furnish parking facilities for weekend sightseers and amusement seekers and the patrons of Field's restaurant, all of whom could be adequately accommodated with parking facilities on the property now owned by the city.

This court has held in an unbroken line of decisions that where the right to condemn exists, and the property is subject to the right of eminent domain and is being condemned for a public use, and the right to condemn is not being abused, courts cannot deny the right to condemn on the ground that the exercise of the power is unnecessary or not expedient, as the determination of that question devolves upon the legislative branch of the government and

is a question which the judicial branch of the government cannot determine; and that in such cases courts may only rightfully determine whether a petitioner has the power to exercise the right of eminent domain, whether the property is subject to the right of eminent domain and is being taken for a public use, whether the power is being abused, as by the taking of an excessive amount of property, and other kindred questions which do not involve a determination of the necessity or expediency of the taking of the lands sought to be condemned. (*Poole* v. *City of Kankakee,* 406 Ill. 521; *Pittsburgh, Ft. Wayne and Chicago Railway Co.* v. *Sanitary Dist.* 218 Ill. 286.) The general rule is that where the legislature has delegated to a corporation the authority to exercise the power of eminent domain, the corporation has also the authority to decide on the necessity for exercising the right, and its decision will be conclusive in the absence of a clear abuse of the power granted. (*Zurn* v. *City of Chicago,* 389 Ill. 114; *Illinois Iowa Power Co.* v. *Rhein,* 369 Ill. 584; *Chicago, Milwaukee and St. Paul Railway Co.* v. *Franzen,* 287 Ill. 346.) An abuse of such power, however, will not be tolerated, and if no necessity for its exercise exists, or if it appears that the quantity of the property sought to be taken is grossly in excess of the amount necessary for the public use, the court will not permit the land to be taken. *City of Chicago* v. *Lehman,* 262 Ill. 468.

As to the amount of the land appropriated, this court has decided frequently that a corporation having the power to exercise the right of eminent domain will be permitted a large discretion in determining for itself the amount of land to be taken. It is, of course, permissible for the condemnor to take not only sufficient land for the present need, but it may, and should, anticipate the future increased demands for the public use to which the land is to be devoted. This court is fully committed to this rule. *Village of Depue* v. *Banschbach,* 273 Ill. 574; *Fountain Creek Drainage Dist.*

598

v. *Smith,* 265 Ill. 138; *Chicago and Western Indiana Rail-road Co.* v. *City of Chicago,* 255 Ill. 136; *Bell* v. *Mattoon Waterworks and Reservoir Co.* 245 Ill. 544.

The city of Chicago, in its determination of whether the taking of property is necessary for public use in providing parking facilities at the airport, has a right to and should consider not only the present needs of the public, but those which may be fairly anticipated in the future.

The claim that the jury, when taken to view the premises being condemned, was also taken to view other property not in controversy and that the same constituted prejudicial error was made for the first time in appellants' motions for a new trial. It appears from the affidavits of counsel that the attorneys for both parties in case No. 31795, with two deputy sheriffs assigned to conduct the jury to view the premises being condemned, went by motorbus to Fifty-eighth Street and Cicero Avenue, where the jurors viewed the property, and while on said premises had an opportunity to view surrounding property which was visible to the jurors from the property in question; that after they re-entered the bus, the attorney for the city requested that the jury be taken to the vicinity of Sixty-third Street, and that the whole of the view of the property by the jury from the time the jury was taken from Fifty-sixth Street in a southerly direction to Sixty-fifth Street and from Sixty-fifth Street in a northerly direction to Sixtieth Street was without the consent of the appellants and in prejudice of their rights.

The counteraffidavit of the attorney for the city who accompanied the jury was filed, in which he alleged that after the inspection of the premises in question, he suggested, and the attorney Latchford agreed, that the route to be used in returning should be south on Cicero Avenue to Sixty-third Street, thence west on Sixty-third, and thence by various cross streets back to the county building; that at no time were the jurors taken upon any property other

than that sought to be condemned nor was their attention directed to any other property.

Appellants contend that the fact that the jury was driven along Cicero Avenue between Fifty-eighth and Sixty-fifth streets constitutes reversible error, which they did not waive by thereafter participating in the trial; and in support of this contention they cite *Tedens* v. *Sanitary Dist.* 149 Ill. 87. However, in the *Tedens case* the jurors, after viewing the premises being condemned, were taken upon and examined another tract of land in the locality, while in the instant case they were merely driven past other property not involved in the proceedings.

Appellants do not claim that at any time during the trip in question the jurors were taken upon, or their attention directed to, or that the bus stopped at or near, any premises other than those being condemned. Furthermore, appellants' counsel did not at any time during the trial bring to the attention of the court the matter of this alleged view of other property and the impropriety thereof. The appellants having thus submitted the cause to the jury, are in no position to thereafter complain that, because the jury was driven along Cicero Avenue between Fifty-eighth and Sixty-fifth streets, prejudicial error was committed.

It is the settled doctrine of this court that the damages awarded by the jury in a condemnation proceeding will not be disturbed where the evidence is conflicting, the jury viewed the premises, and the amount of compensation fixed is within the range of the evidence, unless there has been a clear and palpable mistake or some erroneous ruling which might have misled the jury or the verdict was the result of passion and prejudice. (*Forest Preserve Dist.* v. *Draper,* 387 Ill. 149.) The appellants recognize this rule, but seek to come within the exception thereto above stated, urging that the verdict is the result of passion and prejudice caused by the injection of improper evidence on behalf of appellee and derogatory and prejudicial remarks of appellee's coun-

sel in his closing argument concerning the Caffarello sale, and that the verdict is the result of improper evidence and contrary to the manifest weight of the competent evidence.

No objection was made to any statements or remarks which appellee's counsel addressed to the jury, and therefore the propriety of the same is not before this court for review. Parties cannot complain of alleged improper remarks to the jury where they make no objection thereto.

The improper evidence which is claimed to have motivated the jury in fixing valuations is the jury's alleged view of other premises than those being condemned, and Shapiro's testimony that a 25-foot lot on the east side of Cicero Avenue between Sixty-first and Sixty-second street sold in July, 1946, for $1500. The testimony as to this sale was admitted over appellants' objection that the property sold was different in character from the property being condemned and that there had been no showing that the sale was a voluntary one. Shapiro, the real-estate broker who made the sale, testified that the owner listed the property with him for sale, that he knew nothing about the owner and had no knowledge as to the circumstances which brought about the sale or whether the owner was compelled to sell the property. The trial court did not abuse its discretion in refusing to exclude evidence of this sale on the ground that the sale was not a voluntary sale. (*South Park Comr's* v. *Livingston,* 344 Ill. 368.) A person may be compelled by force of circumstances to part with property which he might desire to hold, but involuntary sales imply compulsion under a decree, execution or something more than inability to pay upkeep charges. (*Forest Preserve Dist.* v. *Eckhoff,* 372 Ill. 391.) The admission of testimony of this character is largely a matter of discretion for the trial court. *Forest Preserve Dist.* v. *Eckhoff,* 372 Ill. 391; *South Park Comr's* v. *Livingston,* 344 Ill. 368.

No fixed or general rule can be laid down governing the degree of similarity that must exist between the prop-

erty sold and that condemned to make evidence of the sale admissible, but the admissibility of such evidence must, in each instance, be determined by the trial judge, within the proper limits of his discretion. (*Forest Preserve Dist.* v. *Kercher,* 394 Ill. 11.) This court recognizes that "similar" does not mean "identical," but means having a resemblance, and that property may be similar in the sense in which the word is here used though each possesses various points of difference. (*Forest Preserve Dist.* v. *Lehmann Estate, Inc.* 388 Ill. 416.) Where, as in this instance, a reasonable basis for comparison exists between the property sold and that being condemned, evidence of the sale is not incompetent, and the dissimilarities between the properties, which are disclosed to the jury, affect the weight and value of the testimony rather than its competency. (*Forest Preserve Dist.* v. *Folta,* 377 Ill. 158.) In the instant case the testimony of Shapiro concerning the sale objected to was not incompetent evidence.

The evidence of the three witnesses who testified for the city on the question of values is assailed on the ground that they did not take into consideration certain sales in forming their opinions, and that one witness testified that in forming his opinion of values, he gave particular attention to the sale of the lot on Cicero Avenue between Sixty-first and Sixty-second streets. It appears from the record that these witnesses were real-estate brokers and appraisers, who had been in business in Chicago for many years; that their business activities and operations covered the southwest side of the city, which was the part of the city in which the airport was located, and that they were thoroughly acquainted with the area surrounding the airport and the development of such area and had been for years.

Appellants say that the testimony of these witnesses is for sale as paid witnesses testifying for the city, and urge this as another reason why their testimony is entitled to but little weight. There is nothing in the record to warrant

this attack upon the credibility of these witnesses. Furthermore,.the credibility of the witnesses is a question for the jury. It is not for this court to weigh the evidence or to determine the credibility of the witnesses in eminent domain cases where, as here, the jury viewed the premises and fixed the compensation within the range of the testimony. Under such circumstances, the preponderance of the evidence must be strong and clear to justify this court in disturbing the verdict of the jury. (*Chicago, Peoria and St. Louis Railway Co.* v. *Wolf,* 137 Ill. 360.) That no such preponderance exists in this case is apparent from an examination of the record, and we find no error of law or any incorrect ruling by the trial court that might have misled the jury, nor anything in the record to indicate that the verdict was the result of passion or prejudice.

For the reasons above stated, the judgment of the circuit court is affirmed.

*Judgment affirmed.*