THE VILLAGE OF WHEELING, Plaintiff-Appellant, v. EXCHANGE NATIONAL BANK OF CHICAGO, as Trustee, *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—88—3824

Opinion filed March 22, 1991.—Rehearing denied June 4, 1991.

Burke & Ryan, of Chicago (Thomas T. Burke, William E. Ryan, and Barry A. Springer, of counsel), for appellant.

Fisher & DiMonte and Thomas L. Ruth, Jr., both of Chicago, and Shannon & Johnson, P.C., and Mark A. LaMantia, both of Portland, Oregon (Ward P. Fisher and Karen Fisher DiMonte, of counsel), for appellees.

Keck, Mahin & Cate, of Chicago (Kai A. Nebel, James H. Ryan, and Edward R. Gower, of counsel), for *amicus curiae* Illinois Tax Increment Association.

JUSTICE COCCIA delivered the opinion of the court:

This is an appeal by the Village of Wheeling from the trial court's dismissal of its complaint filed under, and pursuant to, its eminent domain powers. The trial court ruled in favor of the defendant property owners following a hearing on their motion to dismiss. No issues were raised on the pleadings and no cross appeals were filed. The sole issue raised on appeal is whether the trial court erred in dismissing Wheeling's complaint. We reverse and remand for trial, holding that the trial court erred in dismissing Wheeling's complaint.

The Real Property Tax Increment Allocation Redevelopment Act (TIA) (Ill. Rev. Stat. 1977, ch. 24, par. 11—74.4—1 *et seq.*) provides for a planning and financing mechanism whereby municipalities of the State of Illinois can promote and assist in the economic development of redevelopment areas. The Village of Wheeling adopted such a plan by ordinance on February 25, 1985. The ordinance identified the Crossroads Redevelopment Project Area as the designated area for proposed redevelopment. Various other ordinances were adopted by Wheeling, including ordinance No. 2314, authorizing the Village of Wheeling to acquire property through condemnation or otherwise in the Tax Increment Redevelopment Project Area. Ordinance No. 2314 authorized the acquisition of the real property being condemned in this suit, with the board of trustees of Wheeling specifically finding that the acquisition of these properties was necessary in order to implement the Wheeling Tax Increment Plan. Defendants are property owners of certain parcels located within the subject area. The Village

of Wheeling filed the instant complaint to condemn the subject property pursuant to its eminent domain powers under the TIA.

The owners and tenants of three of the parcels in question, who are the appellees in this proceeding, filed traverses and motions to dismiss plaintiff's complaint. The trial court, in undertaking to resolve the issues raised by the defendants' traverses and motions to dismiss, elected to hold an evidentiary hearing thereon and, in doing so, decided to resolve all legal issues initially and separately, and then to proceed to resolve the factual issues.

On December 8, 1987, the trial court ruled in favor of the Village of Wheeling on all legal issues, finding:

"2. The Tax Increment Allocation Redevelopment Act, [citation] (hereinafter the Act) does not violate the due process or equal protection clauses of the U.S. Constitution;

3. Plaintiff adopted a Redevelopment Plan and Redevelopment Project prior to designating a redevelopment project area. The redevelopment project adopted by plaintiff satisfied the requirements of the Act for the reasons stated by the Court."

No appeal was taken from the December 8, 1987, trial court order.

The evidentiary hearing on the traverses and motions to dismiss occurred on March 24 and 25, 1988. The primary focus of the hearing was whether the area qualified as blighted or conservation, or both, under the TIA, and whether the condemnation of the appellees' property was necessary. The burden of going forward with the evidence to establish its *prima facie* case was that of the Village of Wheeling.

The plaintiff initially introduced into evidence ordinances Nos. 2157, 2158, 2159 and 2314. Those ordinances found:

"(a) The Wheeling Board of Trustees, being aware of the conditions of the project area, and having reviewed studies and information concerning the condition of the project area, found the Wheeling Redevelopment Project Area qualified for redevelopment as a blighted area or conservation area or both, as defined in the Tax Increment Act; and

(b) The condemnation of the property listed in Ordinance 2314 was necessary, required and needed to achieve the objectives of the Wheeling Tax Increment Plan and Project."

In addition to the foregoing, the evidence showed that the Wheeling Tax Increment Redevelopment Plan (exhibit D to ordinance No. 2157) contained the opinions of Teska and Associates that support the findings made by the Wheeling Board of Trustees. The Teska firm

was of the opinion that the area was "clearly eligible" for redevelopment pursuant to the Tax Increment Act. Both the Wheeling Board of Trustees and the Teska firm found that the area qualified as a "blighted area" or "conservation area" under the Act. Either finding would permit the adoption of a tax increment redevelopment plan and condemnation of appellees' property, such being necessary to achieve the objectives of the plan. In addition, included in the redevelopment plan (which plan was incorporated into ordinance No. 2157) were specific findings that the Crossroads Redevelopment Project Area satisfied the statutory criteria for both a blighted area and a conservation area.

As noted by the trial court in its decision, the TIA defines "blighted" and "conservation" areas as follows:

"11—74.4—3. Definitions

\* \* \*

(a) 'Blighted area' means any improved or vacant area within the boundaries of a redevelopment project area located within the territorial limits of the municipality where, if improved, industrial, commercial and residential buildings or improvements, because of a combination of 5 or more of the following factors: age; dilapidation; obsolescence; deterioration; illegal use of individual structures; presence of structures below minimum code standards; excessive vacancies; overcrowding of structures and community facilities; lack of ventilation, light or sanitary facilities; inadequate utilities; excessive land coverage; deleterious land use or layout; depreciation of physical maintenance; lack of community planning, is detrimental to the public safety, health, morals or welfare, or if vacant, the sound growth of the taxing districts is impaired by, (1) a combination of 2 or more of the following factors: obsolete platting of the vacant land; diversity of ownership of such land; tax and special assessment delinquencies on such land; flooding on all or part of such vacant land; deterioration of structures or site improvements in neighboring areas adjacent to the vacant land, or (2) the area immediately prior to becoming vacant qualified as a blighted improved area, or (3) the area consists of an unused quarry or unused quarries, or (4) the area consists of unused railyards, rail tracks, or railroad rights-of-way, or (5) the area, prior to the area's designation, is subject to chronic flooding which adversely impacts on real property which is included in or in proximity to any improvement on real property which has been in existence for at least 5 years and which substantially contrib-

utes to such flooding, or (6) the area consists of an unused disposal site, containing earth, stone, building debris or similar material, which were removed from construction, demolition, excavation or dredge sites, or (7) the area is not less than 50 nor more than 100 acres and 75% of which is vacant, notwithstanding the fact that such area has been used for commercial agricultural purposes within 5 years prior to the designation of the redevelopment project area, and which area meets at least one of the factors itemized in provision (1) of this subsection (a), and the area has been designated as a town or village center by ordinance or comprehensive plan adopted prior to January 1, 1982, and the area has not been developed for that designated purpose.

(b) 'Conservation area' means any improved area within the boundaries of a redevelopment project area located within the territorial limits of the municipality in which 50% or more of the structures in the area have an age of 35 years or more. Such an area is not yet a blighted area but because of a combination of 3 or more of the following factors: dilapidation; obsolescence; deterioration; illegal use of individual structures; presence of structures below minimum code standards; abandonment; excessive vacancies; overcrowding of structures and community facilities; lack of ventilation, light or sanitary facilities; inadequate utilities; excessive land coverage; deleterious land use or layout; depreciation of physical maintenance; lack of community planning, is detrimental to the public safety, health, morals or welfare and such an area may become a blighted area." Ill. Rev. Stat. 1987, ch. 24, par. 11—74.4—3.

In addition to the aforementioned findings made by the Wheeling Board of Trustees in ordinance No. 2157, the introduction into evidence of the several ordinances, as well as the opinion of Robert B. Teska Associates, Inc., Wheeling called as an expert witness Nicholas Trkla. He was found qualified as an expert by the trial court at the evidentiary hearing. Trkla was hired for purposes of this litigation. Trkla testified that 10 of the 14 statutory factors were present to satisfy the criteria for qualifying the area as blighted.

We note that the defendants did not call a single witness. They offered no evidence to contradict the findings made by the Village of Wheeling, or the testimony of the expert witness, Trkla, other than to stand on their cross-examination of Trkla.

On December 1, 1988, the trial court entered its memorandum, decision and judgment, finding that the Village of Wheeling failed to

prove whether the subject area was either a blighted area or a conservation area, or a combination of both, and granted defendants' motion to dismiss. This appeal followed. We also note that briefs were filed by the Village of Wheeling, the plaintiff in the original action, as well as an *amicus curiae* brief filed by the Illinois Tax Increment Association. The Association is comprised of various municipalities, law firms and consulting firms involved in promoting the economic development of redevelopment project areas pursuant to the Tax Increment Allocation Redevelopment Act noted above. In addition, briefs were also filed by defendant owners, Dunkin' Donuts of Illinois, Inc., and Erwin F. and Ivy F. Dreiske. The Dreiskes are owners of a fourth parcel, who, by court order of May 15, 1988, adopted the three traverses and will be bound by this court's decision.

## ANALYSIS

### I

■ The law is well settled in Illinois, and the Illinois Supreme Court has consistently held, that when valid village ordinances for a taking of property for a public purpose are presented to the trial court, such documents establish a *prima facie* case authorizing the acquisition of the property in question by eminent domain proceedings. (*City of De Kalb v. Anderson* (1976), 43 Ill. App. 3d 915, 357 N.E.2d 837; *City of Chicago v. Walker* (1971), 50 Ill. 2d 69, 277 N.E.2d 129.) In *Anderson*, as in the case at bar, the City of De Kalb introduced its resolution (here, ordinance) approving the redevelopment plan and the ordinances passed by the city (here, village) to condemn specific parcels of property, including the defendants' property. As was noted in *Anderson*, it was the duty of the defendants "to proceed with evidence that there was an abuse of discretion by the City of De Kalb or the City lacked the authority to condemn." (*Anderson*, 43 Ill. App. 3d at 917, 357 N.E.2d at 839.) The defendants in *Anderson* failed to introduce any evidence, but merely filed an affidavit stating their opinions and beliefs relating to the condemnation. In the instant case, the defendants likewise failed to present any additional substantive evidence of their own to overcome Wheeling's *prima facie* case.

■ Defendant Dunkin' Donuts contends that because Wheeling elected to call an expert witness and introduce additional evidence (in addition to producing its ordinances), it allowed the defendants, through cross-examination, to establish that the village acted improperly or otherwise abused its discretion. In this manner, contends Dunkin' Donuts, the defendants met and overcame the presumption

that the ordinances established a *prima facie* case, and need not offer any additional evidence. We do not agree that the evidence obtained through defendants' cross-examination of Nicholas Trkla (plaintiff's expert witness) effectively diluted or overcame either plaintiff's *prima facie* case or the legitimacy of plaintiff's right to eminent domain under the facts in this case. We therefore find the defendants' arguments in this regard unpersuasive.

■■ Defendants also contend that the real reason for the taking is that private developers and their supporters want sole control over the property without court interference. This begs the question. The taking of property for a valid public purpose and then reselling a portion of that property for development for private purposes does not render the taking/condemnation invalid. (*City of Chicago v. Walker* (1971), 50 Ill. 2d 69, 277 N.E.2d 129.) Nowhere in defendants' briefs or in the transcript of the hearing below is there any indication that the taking was not for a public purpose. Furthermore, it is not for the courts to question the motives which prompt a valid taking, unless there has been a clear abuse of the power of the municipality. (*City of Chicago v. R. Zwick Co.* (1963), 27 Ill. 2d 128, 188 N.E.2d 489.) No such abuse has been shown here. Nor can the courts deny the right to condemn on the grounds that the taking is not necessary. That is a legislative determination. *City of Chicago v. Vaccarro* (1951), 408 Ill. 587, 97 N.E.2d 766.

■■ Defendants further contend that since their buildings do not fall in the "below code" standards required for blighted areas, their property should not be included in the taking. There is no merit in this contention either. The test for the taking is based on the condition of the area as a whole. It does not matter that there are some buildings in the area which do not come under the headings of "blighted" or "conservation" areas. The fact that defendants' buildings may be unoffending, taken individually, is no defense to the condemnation proceedings. The whole area is to be considered—not the individual structures on a building-by-building basis. *City of Chicago v. Barnes* (1964), 30 Ill. 2d 255, 195 N.E.2d 629.

It is our view that the Village of Wheeling, having submitted its relevant ordinances into evidence, together with the expert testimony it introduced, has made out a *prima facie* case. In so holding, we agree with the judgment of the court below. However, we disagree with that portion of the decision in the trial court finding that defendants' evidence was sufficient to rebut Wheeling's *prima facie* case. Since the defendants failed to support their motions with contrary evidence, the motions should have been denied.

## II

We have carefully reviewed the entire record and note that all briefs go into great detail concerning the factors considered in classifying an area as either blight or conservation areas. Pursuant to the statutory definitions above noted, 5 of the 14 statutory factors must be present to sustain a legislative finding of blight, whereas for an area to qualify as a conservation area, 50% of the structures must be 35 or more years old and the area must have at least three of the statutory factors present. Village of Wheeling Ordinance No. 2157, effective April 29, 1987, states that the taking can occur if the area in question is either a blighted or conservation area.

■ In his testimony, Nicholas Trkla testified that there were at least 10 statutory factors present to classify the area as a blighted area. He further testified that there were seven strong factors, to wit: age, obsolescence, deterioration, structures below minimum code, deleterious land use, depreciation of physical maintenance, and lack of community planning. In addition, three of the statutory factors of dilapidation, excessive vacancies, and excessive land coverage were present to a moderate degree. Even if we assume, as defendants contend, that some of the factors testified to by Trkla were not exactly as stated in the findings of the report of Teska & Associates, still, only 5 of the 14 statutory factors need be present. Furthermore, the Drieskes' brief admits that seven of the required factors necessary to support a finding of "blight" were present, which, of course, is two more than the minimum of five required by the statute. It is our opinion that there were sufficient factors present for the subject property to qualify as a blighted area. And, again, when using the statutory factors, we look at the area as a whole, and not at the individual structures.

■ In further support of their position, defendants refer to a compliance manual prepared on January 13, 1989, by an unknown person at the Illinois Department of Revenue. We agree with the plaintiffs herein in that since this manual was prepared after the trial court's decision in this case, and, of necessity, unavailable in evaluating the evidence and in rendering its decision, it cannot now be used on appeal in support of defendants' contentions. *Burys v. First Bank* (1989), 187 Ill. App. 3d 384, 543 N.E.2d 253.

■ We further hold that once the statutory requirements have been met for the area to be classified as blighted area, it does not matter whether or not the area could also be qualified as a conservation area. The statute only provides that it can be "either" a blighted

"or" conservation area, "or a combination" of both. The fact that plaintiff went further than necessary or required after establishing its *prima facie* case, and offered additional evidence concerning the classification of the area as a conservation area, should not and cannot be held against it. Defendants contend that Nicholas Trkla could not classify the area as a conservation area, and therefore the area does not qualify. We disagree. By definition, a conservation area is not yet blighted, but may become blighted. (Ill. Rev. Stat. 1977, ch. 24, par. 11—74.4—3(b).) As we have stated, since it is already classified as blighted, we need not concern ourselves with whether or not the area could also qualify as a conservation area. By definition, the area only needs to be "either" a blighted "or" a conservation area. Both requirements are not necessary to qualify under the TIA.

### III

Finally, we turn to whether or not the trial court applied the proper standard to Wheeling's ordinances. We believe it did not.

██ It is well settled that unless there is a clear abuse of discretion by the municipality, this court cannot interfere. (*Chicago & Alton R.R. Co. v. City of Pontiac* (1897), 169 Ill. 155, 48 N.E. 485; *Tomasek v. City of Des Plaines* (1976), 64 Ill. 2d 172, 354 N.E.2d 899.) The general rule as stated in *City of Chicago v. Vaccarro* (1951), 408 Ill. 587, 597, 97 N.E.2d 766, 771-72, is "that where the legislature has delegated to a corporation the authority to exercise the power of eminent domain, the corporation has also the authority to decide on the necessity for exercising the right, and its decision will be conclusive in the absence of a clear abuse of the power granted." Absent a showing of an abuse of discretion, of which there is no indication here, the defendants must show that the ordinance is arbitrary, unreasonable or capricious. Again, the burden of going forward with the evidence was on the defendants, and they simply failed to satisfy their burden. *Thillens, Inc. v. Hodge* (1954), 2 Ill. 2d 45, 116 N.E. 886.

As noted by the Illinois Supreme Court in *Tomasek*, "the one attacking an ordinance bears the burden of demonstrating its invalidity. The challenging party must establish by clear and convincing evidence that the ordinance, as applied, is arbitrary and unreasonable and bears no substantial relation to the public health, safety or welfare." *People v. Tomasek*, 64 Ill. 2d at 179-80, 354 N.E.2d at 903.

██ To suggest, as defendants contend, that they (the defendants) had no burden to go forward with the evidence to overcome the presumption created by the finding that plaintiff had established its

*prima facie* case, particularly when taken together with defendant's admission contained in its brief that 7 of the required 14 statutory factors were established in support of a finding of blight, is absurd. Furthermore, a review of the record reflects that all but 2 of the 14 statutory requirements were present in some degree. Even taking the strongest seven factors as testified to by Trkla, defendants fail to accept the fact that the statute only requires five, and no matter how one counts, 7 or 10 is still more than the required 5. After our review of the record, and as directed by *Tomasek*, we are required to conclude that the trial court erred in granting defendants' motion to dismiss the plaintiff's complaint. The defendants failed to overcome the presumption of the validity of the ordinance through clear and convincing evidence, or that the ordinance as applied was arbitrary, unreasonable or capricious. The trial court should not have interfered with the legislative action of the Village of Wheeling. *Colville v. City of Rochelle* (1970), 130 Ill. App. 2d 541, 268 N.E.2d 222.

For the reasons stated above, the ruling of the trial court is reversed and remanded to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.

LORENZ, P.J., and MURRAY, J., concur.